Frank **FERNANDEZ**, Plaintiff,

v.

**NORTH SHORE ORTHOPEDIC SURGERY & SPORTS MEDICINE, P.C.,** Defendant.

No. Civ.A. CV 96–4489.

United States District Court, E.D. New York.

Jan. 27, 2000.

Law Offices of Charmaine M. Stewart & Assocs. (Charmaine M. Stewart and Tracy Eskridge–Joseph), Rosedale, New York; George B. Lewis, Law Offices of George B. Lewis, Brooklyn, New York, of Counsel, for plaintiff.

Lamb and Barnosky, LLP (Scott M. Karson and Robert H. Cohen), Melville, New York, for defendant.

### MEMORANDUM AND ORDER

CARMAN, Judge.[1]

Defendant, North Shore Orthopedic Surgery & Sports Medicine, P.C. (North Shore), moves pursuant to Rule 50 [2] of the

---

**1.** The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

**2.** Defendant appears, pursuant to Rule 50(b), to renew its Rule 50(a) motion made at the close of the evidence. Rule 50(b) states, in pertinent part,

[i]f, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment....

FED.R.CIV.P. 50(b) (1999). The jury reached its verdict on damages on October 29, 1999, and the defendant timely filed its motion on November 12, 1999 pursuant to court order.

Federal Rules of Civil Procedure (FRCP) for judgment as a matter of law in favor of defendant for the two causes of action sounding in retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3 (1994)[3], and moves pursuant to Rule 59[4] of the FRCP for a new trial of the said causes of action sounding in retaliation or for damages. North Shore claims that the evidence of retaliation was legally insufficient to sustain the jury's verdict or, alternatively, the verdict finding North Shore liable for retaliation was against the weight of the evidence. Defendant also moves to vacate or reduce the jury's award of back pay, front pay, and punitive damages as being against the weight of the evidence and excessive, moves to cap the jury's award of front pay in accordance with 42 U.S.C. § 1981a(b)(3)(A) (1994)[5], and moves for the Court to grant such other and further relief as the Court may deem to be just and proper.

The jury awarded $100,000 in back pay, including $7,067 stipulated to by the parties in offsetting compensation for money actually earned and $15,799.66 in mitigation of damages for compensation plaintiff could have earned through reasonable diligence to find suitable employment. The jury awarded $160,000 in front pay without adjustments for mitigation of damages for compensation plaintiff could earn in the future using reasonable diligence to find suitable employment. The jury additionally awarded plaintiff $100,000 in punitive damages.

Plaintiff, Frank Fernandez (Fernandez), opposes these motions as improper, without basis, inapplicable, and not against the weight of the evidence nor excessive, respectively.

BACKGROUND

Fernandez, a male of Hispanic national origin, was employed by defendant, North Shore, in February 1981 as a part-time x-ray technician. He worked in that capacity until November 30, 1994 when defendant discharged plaintiff. On or about May 31, 1994, plaintiff filed a complaint of unlawful discrimination with the New York State Division of Human Rights (Division of Human Rights) alleging defendant had discriminated against him based on his national origin by denying plaintiff his annual salary increment and reducing his annual bonus. On or about August 9, 1994, the parties entered into a formal conciliation agreement. In October of the same year, defendant adjusted plaintiff's employment schedule, and in November, defendant terminated plaintiff.[6] The reasons underlying the termination and the incidents leading up to the termination form the basis of Fernandez's law suit

Plaintiff does not dispute the timeliness of defendant's Rule 50 motion.

**3.** Section 2000e–3(a) states, in pertinent part, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter...." 42 U.S.C. § 2000e–3(a) (1994).

**4.** Rule 59(a) states, in pertinent part,

[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....
FED.R.CIV.P. 59(a) (1999).

**5.** Section 1981a(b)(3)(A) states, in pertinent part,

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
42 U.S.C. § 1981a(b)(3)(A) (1994).

**6.** Parties stipulated to the above-mentioned facts in the Proposed Joint Pre–Trial Order signed by both parties dated May 14, 1999.

under Title VII of the Civil Rights Act of 1964.

Shortly after he was discharged, Fernandez commenced an action of discrimination first with the Division of Human Rights and later before this Court pursuant to, among other things, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, for employment discrimination on the basis of national origin. Trial began in Brooklyn, New York on October 18, 1999 and ended on October 29, 1999. North Shore defended the suit by arguing that it had discharged Fernandez because his performance and attitude at the workplace were unacceptable. The jury, however, found North Shore terminated Fernandez's employment and singled him out in retaliation for his accusations of national origin discrimination. The jury awarded Fernandez $100,000 in back pay, $160,000 in front pay, and $100,000 in punitive damages.

The court notes significant questions have been raised concerning the timeliness and service of plaintiff's opposition to defendant's post-trial motions.[7] The Court notes defendant's objections and expresses its own concern over plaintiff's counsel's less than vigilant adherence to the Court's post-trial schedule. Although the Court is concerned about the filing and service procedures used by plaintiff's counsel, the Court, in exercising its discretion, has determined to consider plaintiff's opposition brief outright.

## DISCUSSION

 A claim of retaliatory discharge is determined under the three part burden shifting analysis prescribed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995). In order to establish a *prima facie* case, the plaintiff must show by a preponderance of the evidence that (1) participation of the protected activity is known to the defendant; (2) an employment action disadvantaging the plaintiff was taken; and (3) a causal connection between the protected activity and the adverse employment action exists. *See Tomka*, 66 F.3d at 1308. If the plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its action. *See id.* If the defendant articulates a legitimate, non-discriminatory reason for its action, the plaintiff must then prove that the proffered reason was merely a pretext for retaliation and that an impermissible motive was a motivating factor in defendant's actions. *See id.*

### A. Motion for Judgment as a Matter of Law

 In ruling on a motion for judgment as a matter of law, the court cannot

---

7. At the close of trial on October 29, 1999, the parties agreed to the following briefing schedule for all post-trial motions: (1) plaintiff's and defendant's motions were to be served on opposing counsel by mail and fax and filed with the Court by November 12, 1999; (2) opposition to respective motions were to be served on opposing counsel by mail and fax and filed with the Court by November 26, 1999; and (3) all replies to opposition papers were to be served on opposing counsel by mail and fax and filed with the Court by November 30, 1999. The Court instructed that courtesy copies of all documents be sent simultaneously to Judge Carman's chambers at the United States Court of International Trade. *See* Trial Transcript, October 29, 1999, at 47–8.

Plaintiff's counsel filed and served its opposition to defendant's post-trial motion on November 29, 1999. Plaintiff's counsel argues it believed the due date for its opposition brief was changed by way of letter from defense counsel served on plaintiff with its post-trial motion which stated the post-trial motion is "returnable before Judge Gregory W. Carman on November 30, 1999." The Court finds this language suggests no change in the due date concerning plaintiff's opposition brief and notes the Court itself never made any such change. The Court therefore considers the original date of November 26, 1999 as the date on which plaintiff's opposition papers were due.

itself weigh credibility or otherwise consider the weight of the evidence; rather, the court should grant judgment as a matter of law pursuant to FRCP 50 where (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against the movant. *See, e.g., Williams v. County of Westchester*, 171 F.3d 98, 101 (2d Cir.1999) (quoting *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir.1994)).

■ In support of its motion for judgment as a matter of law, North Shore points to evidence which supports the company's assertion that Fernandez was terminated due to legitimate complaints about his performance and not in retaliation for assertion of his rights. Defendant argues there was evidence at trial of plaintiff's insubordination, unsatisfactory performance, and uncivil conduct in dealing with his supervisors and fellow employees which ultimately lead to his termination. Further, defendant argues, the documented evidence of plaintiff's shortcomings at work occurred both prior and subsequent to his May 1994 complaint to the Division of Human Rights, sufficient to rebut any inference of retaliatory intent. Moreover, defendant asserts the evidence adduced at trial established that plaintiff filed his initial complaint with the Division of Human Rights in May 1994 and that his employment was not terminated until November 1994, over six months later. According to defendant, although a causal connection may be established in part by showing the protected activity was closely followed by adverse action, temporal proximity alone is insufficient to find a causal connection evidencing retaliatory motive. Moreover, defendant argues, a wealth of case law establishes that a lapse of more than six months between the protected activity and the adverse action precludes a finding of a causal link as a matter of law. Thus, no reasonable jury could, as a matter of law, infer retaliation because there was no evidence of a causal connection between the protected activity and the adverse action.

In arguing that Fernandez made no showing that North Shore's firing of plaintiff was causally connected to plaintiff's engaging in protected activity, North Shore overlooks important facts introduced by Fernandez. For instance, plaintiff was fired not only a few months after filing his claim with the Division of Human Rights, but he was fired approximately four months after he signed the conciliation agreement which was the product of that claim. Plaintiff testified at trial that in November 1994, four months after he signed the conciliation agreement, he was asked to resign, and when he did not, he was terminated. *See* Trial Transcript (Trial Tr.), October 19, 1999, at 122–23. Further, plaintiff testified at trial that after he signed the conciliation agreement with the defendant, the attitude towards plaintiff worsened and became hostile. *See id.* at 118–22.

The jury could have accepted North Shore's version of the facts, but the jury choose not to do so. This Court finds no reason to disturb the jury's verdict.

### B. *Motion for New Trial*

■ The Court also finds defendant's alternative motion for a new trial to be without merit. According to the Second Circuit, the Court may grant a new trial pursuant to Rule 59 of the FRCP where the Court is convinced that the jury's verdict was a seriously erroneous result or a miscarriage of justice. *See, e.g., United States v. Landau*, 155 F.3d 93, 104 (2d Cir.1998). A motion for a new trial, unlike a motion for judgment as a matter of law, may be granted even if there is substantive evidence to support the jury's verdict. *See Bevevino v. Saydjari*, 574 F.2d 676, 683 (2d Cir.1978). After reviewing the evidence introduced at trial and based on

substantially the same evidence cited above to support the Court's denial of defendant's motion for judgment as a matter of law, this Court is not convinced that the jury reached a seriously erroneous verdict or that the verdict was a miscarriage of justice.

## C. *Motion to Cap Jury's Award of Front Pay in Accordance with Section 1981a(b)(3)(A)*

■ Also at issue is whether the award of front pay is a legal remedy to be determined by a jury and subject to the statutory cap introduced by the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(3), or an equitable remedy to be determined by the judge and not subject to the cap. At trial the Court permitted the jury to determine the amount, if any, of front pay to be awarded to the plaintiff, preserving the decision on the propriety of such action until after the proceedings.[8] The jury awarded plaintiff $160,000 in front pay, making no reduction for mitigation.

Section 1981a(b)(3) of Title 42 of the U.S.Code states, in pertinent part, "[t]he sum of the amount of compensatory damages awarded under this section for *future pecuniary losses* ... shall not exceed ... (A) in the case of a respondent who has more than 14 and fewer than 101 employees ... $50,000." 42 U.S.C. § 1981a(b)(3)(A) (emphasis added). Amounts specifically excluded from the compensatory damages award under this section include "backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.2000e–5(g) ]." 42 U.S.C. § 1981a(b)(2) (1994). "[O]ther type[s] of relief authorized" under section 706(g) of the Civil Rights Act of 1964 include "reinstatement ... or *any other*

*equitable relief as the court deems appropriate.*" 42 U.S.C. § 2000e–5(g)(1) (1994) (emphasis added). The parties do not dispute that North Shore had more than 14 and less than 101 employees during the applicable period but rather whether front pay is considered a "future pecuniary loss" and therefore subject to the statutory cap of $50,000 or whether it is excluded from the cap as "other equitable relief."

The determination of whether front pay is included in the statutory cap as a "future pecuniary loss" pursuant to the Civil Rights Act of 1991 is an issue that has sharply divided the courts and has not yet been resolved by the Second Circuit. It appears the cap's applicability depends in large measure upon whether front pay is considered to be equitable relief or a legal remedy within the circuit court.[9] If considered equitable relief, courts generally do not apply the cap. *See, e.g., Martini v. Federal Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1348–49 (D.C.Cir.1999) (finding the cap does not apply, stating D.C. Circuit has regarded front pay as an equitable remedy); *Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 556 (10th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 48, 145 L.Ed.2d 42 (1999) (finding the cap does not apply, stating "front pay" considered "other equitable relief"); *Kramer v. Logan County Sch. Dist. No. R–1,* 157 F.3d 620, 625–26 (8th Cir.1998) (finding the cap does not apply, stating unlike the Sixth Circuit, the Eighth Circuit has always treated front pay as a form of equitable relief). If front pay is considered a legal remedy, however, courts generally apply the cap. *See Hudson v. Reno,* 130 F.3d 1193, 1201–04 (6th Cir.1997) (concluding front pay is a legal remedy and therefore is subject to the cap based in part on fact that Sixth Circuit has treated front pay as a legal, rather than an equitable, remedy).

---

**8.** At least one other court in the Second Circuit similarly permitted the jury to award front pay while reserving decision on the propriety of doing so until post-trial proceedings. *See Dominic v. Consolidated Edison Co.,* 652 F.Supp. 815, 819 (S.D.N.Y.1986).

**9.** Generally, front pay is viewed as equitable relief as it is paid in lieu of reinstatement. *See, e.g., Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984). Here, neither party argues reinstatement is an option.

The Second Circuit has not specifically ruled on whether front pay is an equitable or legal remedy since the enactment of the 1991 Civil Rights Act; however, the Second Circuit appears to treat front pay, in most contexts, as an equitable, rather than a legal remedy. *See, e.g., Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 159 (2d Cir.1992) (remanding to district court for determination of equitable remedy of front pay pursuant to claims of unlawful discrimination under Title VII, 42 U.S.C. § 1981, and Age Discrimination in Employment Act (ADEA) given impossibility of reinstatement in former position); *Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1257–58 (2d Cir.1987) (stating front pay is an equitable remedy in an ADEA case entrusted to the trial judge); *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984) (finding monetary award of front pay necessary as equitable relief in ADEA claim where reinstatement may not be possible). Based on the foregoing analysis, this Court concludes that front pay is considered an equitable remedy in the Second Circuit and therefore the statutory cap applied to "future pecuniary losses" does not apply. Front pay, therefore, is to be awarded at the discretion of the Court.

██ In calculating the size of a front pay award, the court must estimate the plaintiff's ability to mitigate damages in the future. *See, e.g., Dominic,* 822 F.2d at 1258. This determination is subject to the court's discretion. *See id.* Equitable factors which courts have considered in determining whether to award front pay include both the age of the plaintiff and his reasonable prospects of obtaining comparable employment. *See generally Whittlesey,* 742 F.2d at 729.

Fernandez was 59 years old at the time the jury rendered its verdict. *See* Trial Tr., October 26, 1999, at 14. Additionally, Fernandez testified that he is presently employed at the Westchester Medical Center as the weekend supervisor in radiology. *See* Trial Tr., October 18, 1999, at 3. Finally, Fernandez appears to be a highly skilled x-ray technician with approximately 32 years of experience in the field. *See id.* at 54. In light of these facts, the Court finds that an award of front pay that assumes Fernandez will not be able to secure employment for the next six years [10] is unlikely and highly speculative.

Five years have passed since Fernandez's discharge. Though plaintiff appeared to try to find a job in the first thirteen months of his discharge by submitting resumes and filling out applications to five hospitals, *see* Trial Tr., October 26, 1999, at 16, 40–8, he has apparently expended less effort to secure employment in the following years. For example, Fernandez only submitted three resumes and filled out three applications in the last three years. *See id.* at 49–54. Additionally, he wrote one letter in response to an advertisement in 1996 and contacted two employment agencies in 1998. *See id.* at 55, 60–3. Consequently, the Court finds a further two years is a reasonable allotment of time in which he could be expected to find employment comparable to that which he lost at North Shore. *See, e.g., Dominic v. Consolidated Edison Co.,* 652 F.Supp. 815, 820 (S.D.N.Y.1986). The approximate difference between what he would have earned at North Shore for a period of two years is approximately $50,000, based on the sum of $25,000 per year as stipulated to by the parties with regard to the award for back pay. Thus, the jury award of $160,000 is vacated, and the Court awards Fernandez $50,000 in front pay.

Even if front pay were to be considered a legal remedy and therefore subject to the statutory cap, the outcome would be the same. Under the statute, Fernandez's front pay award would be capped at $50,-

---

**10.** The jury awarded Fernandez $160,000 in front pay. This is approximately equal to $25,000 per year for six years, based on the parties' stipulation that the plaintiff's annual earnings derived from North Shore for the back pay period would have been $25,000 per year. *See* Final Instructions for Damages, at 6.

000—the applicable compensatory damages limitation for this case under the Civil Rights Act of 1991. Thus, under either a legal or equitable remedy scheme, this Court would vacate the jury's award of $160,000 and award Fernandez $50,000 in front pay.

### D. *Motion to Vacate or Reduce Jury's Awards of Back Pay and Front Pay*[11]

In submitting plaintiff's damage claims to the jury, the parties stipulated that the plaintiff was entitled to back pay from November 30, 1994 (date of termination) to October 25, 1999 (date of the jury's verdict), the pay rate from November 30, 1994 through December 31, 1994 was $2,083.33, the pay rate for each full year period was $25,000, the pay rate from January 1, 1999 through October 25, 1999 was $20,833.33, and $7,067 was, by stipulation, subtracted from the total back pay award for compensation received during that period. *See* Court's Exhibit No. 6, Damages Worksheet. The Court instructed the jury that it could further reduce the back pay award by mitigation of damages, *e.g.*, the compensation plaintiff could have earned had he been reasonably diligent in seeking suitable new employment. The back pay awarded plaintiff was $122,866.66, less $7,067 for compensation already earned, and a jury adjustment of $15,799.66 for mitigation of damages.[12]

**11.** In light of the Court's determination concerning front pay in Section C of this opinion, the Court does not address defendant's argument concerning front pay in Section D. The Court notes defendant's motion to vacate or reduce the jury's award of front pay focuses in large measure on plaintiff's alleged failure to use reasonable diligence in finding other employment thereby breaching his duty to mitigate. The Court notes the issue of mitigation of damages concerning front pay was fully considered and addressed by the Court under Section C of this opinion. Therefore, the Court finds no need to address further defendant's concerns regarding the front pay award at this time.

**12.** Although neither party has raised it in the papers submitted before the Court, there is a

A plaintiff in a Title VII case has the duty to mitigate damages by using reasonable care and diligence in seeking alternative employment. *See Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997). The plaintiff need not go into another line of work, accept a demotion, or take a demeaning position but must use reasonable care and diligence in seeking a job substantially equivalent to the one that was lost. *See id.* at 456 (citations omitted). The plaintiff's burden does not require him to be successful in mitigation. *See id.* (citations omitted).

Defendant argues that the jury, in rendering its award of back pay, overlooked the overwhelming evidence that plaintiff failed to mitigate damages. Defendant points to evidence adduced at trial that plaintiff made minimal effort to mitigate damages, including submitting resumes and applications to only five hospitals during the first thirteen months and to only three additional hospitals over the next three years. Plaintiff testified he did not thereafter contact any of the hospitals to determine his employment status. Additionally, plaintiff wrote one letter and contacted two employment agencies in 1996 and 1998, respectively. Plaintiff also testified he never contacted a private physician or medical group in any nearby counties (*e.g.*, Suffolk, Nassau, or New York City), although he admitted that many such facilities exist in the surrounding area. Defendant argues, therefore, that plaintiff failed

substantial question whether back pay is an issue for the jury to decide. In the Civil Rights Act of 1991, Title VII was amended to provide a jury trial for a plaintiff seeking compensatory or punitive damages. *See* 42 U.S.C. § 1981a(c)(1) (1994). Compensatory damages are defined by statute, however, as excluding back pay, implying that back pay remains an issue for the court rather than the jury. *See* 42 U.S.C. § 1981a(b)(2) (1994); *see also Pollis v. New Sch. for Social Research*, 93 Civ. 3328, 1996 WL 120816 (S.D.N.Y. March 18, 1996). The Court need not address this issue at this time, however, as the Court concurs with the amount of the jury's back pay award.

to use reasonable diligence in finding other employment thereby breaching his duty to mitigate, and thus the Court should reduce or vacate the jury's award of back pay.

As noted above, the jury reduced plaintiff's back pay award by $15,799.66 for mitigation of damages. The Court concurs with the jury's determination that, based on plaintiff's testimony at trial, plaintiff made minimal efforts to secure additional employment over the last five years. The Court finds the jury's adjustment of approximately $15,000 to plaintiff's back pay award for plaintiff's minimal mitigation efforts reasonably reflects plaintiff's efforts while recognizing some attempt to find work was made. The Court notes all other terms of the back pay award were stipulated to by the parties. The Court finds no reason to disturb the jury's back pay award.

### E. *Motion to Vacate Punitive Damages Award*

 North Shore also moves to vacate the jury's punitive damages award as either against the weight of the evidence or excessive. Punitive damages are available under Title VII where the plaintiff demonstrates that the defendant "engaged in a discriminatory practice or discriminatory practices with *malice* or with *reckless indifference* to the federally protected rights" of the plaintiff. 42 U.S.C. § 1981a(b)(1) (1994) (emphasis added). This standard requires not only that a defendant intentionally violate a federally protected right but that it do so in the face of a "perceived risk that its actions will violate federal law." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 2125, 144 L.Ed.2d 494 (1999). In this case, the jury awarded Fernandez $100,000 in punitive damages. North Shore argues that Fernandez presented insufficient evidence at trial to establish that the retaliation was conducted with the requisite mental state to justify an award of punitive damages. This Court disagrees.

As plaintiff points out, there are at least two instances which establish the appropriateness of the punitive damages award in this instance. First, plaintiff points to evidence that shows defendant failed to remove from plaintiff's personnel records and all records used for such purposes any remarks or reports concerning the incidents alleged in plaintiff's complaint to the Division of Human Rights as required under the conciliation agreement and instead maintained a separate file for such comments. *See* Trial Tr., October 21, 1999, at 101 (afternoon session). Second, plaintiff points to evidence that showed defendant "solicited" writeups against plaintiff to place in his personnel file after he and defendant entered into a conciliation agreement before the Division of Human Rights. *See id.* at 60. Such affirmative steps taken by the defendant have been recognized by the Second Circuit as sufficient to support a jury's finding of punitive damages. *See Vasbinder v. Ambach*, 926 F.2d 1333, 1343 (2d Cir.1991) (finding affirmative steps taken by defendant, including filling plaintiff's record with damaging personnel actions and subsequently stripping him of his duties and increasing his probationary period, as sufficient to support jury's finding of punitive damages in a Section 1983 case).

Moreover, these steps were taken with sufficient knowledge that the activity might violate federal law. According to the conciliation agreement signed by both parties on August 9, 1994, the defendant agreed not to "retaliate against the Complainant in any manner for having filed a complaint with the N.Y.S. Division of Human Rights or the U.S. Equal Employment Opportunity Commission [EEOC]." *See* Pre–Determination Conciliation Agreement and Order After Conciliation, August 9, 1994, at 3, para. 9. Further, defendant agreed to "remove from the Complainant's personnel records and all records used for such purposes any remarks or reports concerning the incidents alleged in the complaint." *See id.* at para. 10. Not only were the doctors in charge of the North

Shore facility present with counsel at the meeting at which the parties entered into the agreement, but Ms. Perla, Dr. Scheman's sister, *see* Trial Tr., October 21, 1999, at 3 (afternoon session), and the supervising manager who asked for comments against plaintiff was also present. *See id.* at 46. Hence, it does not appear defendant could claim it was unaware of the federal prohibition against retaliation.[13] Even if defendant was not explicitly aware such actions might violate federal law, defendant was, at minimum, aware of the federally protected rights of plaintiff as stated in the language of the conciliation agreement. Therefore, this Court finds the jury's award of punitive damages was not the result of "sheer surmise and conjecture" and "reasonable and fair minded persons" could reach a verdict against the movant.[14]

■ Defendant also argues the award of punitive damages is excessive. Whether a punitive damages award is so large as to "shock the judicial conscience" of the court is to be determined in accordance with the three factors identified in *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 575–83, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996):(1) the degree of reprehensibility of the defendant's conduct; (2) the proportion of punitive damages to compensatory damages; and (3) the difference between the punitive damage remedy and civil penalties authorized or imposed in comparable cases. The Courts have used the *Gore* analysis in civil rights and Title VII cases. *See, e.g., Lee v. Edwards*, 101 F.3d 805, 809–12 (2d Cir.1996); *Rivera v. Baccarat, Inc.*, 10 F.Supp.2d 318, 332–33 (S.D.N.Y. 1998).

■ Having considered each of the *Gore* factors, this Court concludes the jury's award of punitive damages is excessive and must be reduced. Regarding the degree of reprehensibility, although the actions of the defendant were objectionable, the Court finds the conduct does not contain the "aggravating factors" generally associated with particularly reprehensible conduct sufficient to warrant a finding of a high degree of reprehensibility under the *Gore* analysis. *See Lee*, 101 F.3d at 809. These factors include: "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Id.* There is no evidence that defendant's actions in this case were violent or presented a threat of violence; nor is there any evidence the defendant has engaged in repeated instances of misconduct with respect to other employees[15]. Thus, this

---

**13.** The Court recognizes there may be instances in which the intentional violation of a federally protected right does not give rise to the award of punitive damages. This may occur where "the employer [is] simply [ ] unaware of the relevant federal prohibition ... [or when] the employer [acts] with the distinct belief that its [act] is lawful ... [or where] the underlying theory ... may be novel or otherwise poorly recognized, or an employer may reasonably believe that its [actions] satisf[y] a bona fide occupational qualification defense or other statutory exception to liability. *See, e.g.*, 42 U.S.C. § 2000e–2(e)(1)." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 2125, 144 L.Ed.2d 494 (1999). None of these reasons, however, appear in this instance.

**14.** Although the defendant, in its motion before the Court, does not specifically identify

under what authority it requests the Court to vacate the jury's punitive damages award, the correct authority for vacating an award for lack of sufficient evidence appears to be Rule 50 of the Federal Rules of Civil Procedure. Thus, this Court applies the motion for judgment as a matter of law standard to the punitive damages analysis.

**15.** The phrase "repeated instances of misconduct," as used by the Second Circuit in *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir.1996) (citing *BMW v. Gore*, 517 U.S. 559, 576–77, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)), appears to refer to evidence of repeated misconduct with respect to other employees rather than repeated misconduct against the plaintiff. *See, e.g., Mahoney v. Canada Dry Bottling Co.*, No. 94–CV–2924, 1998 WL 231082 (E.D.N.Y. May 7, 1998) (considering repeated

Court finds there was a low degree of reprehensibility in this case.

Regarding the ratio of compensatory damages to punitive damages, the Court notes the ratio is extremely high as the jury did not award compensatory damages in this case. Because the compensatory damages here were zero, the use of comparing the ratio between compensatory and punitive damages is not particularly helpful. Accordingly, the Court looks to the punitive damage awards in other comparable civil rights cases.

██ In comparison with other civil penalties for similar conduct, the punitive damages award in this case appears excessive. *See, e.g., Rivera,* 10 F.Supp.2d at 332–33 (finding $375,000 award of punitive damages in a Title VII and ADEA termination case excessive and remitting to $40,000 after finding that both the overt and direct nature of the discrimination and the harshness with which it was manifested justified an award of punitive damages); *Mahoney v. Canada Dry Bottling, Co.,* No. 94–CV–2924, 1998 WL 231082 (E.D.N.Y. May 7, 1998) (finding $650,000 punitive damages award excessive and remitting to $100,000 where there was a finding the defendant specifically instructed its district manager to treat plaintiff differently because plaintiff filed an EEOC charge and where defendant failed to follow up on EEOC charge); *Ettinger v. State Univ.,* No. 95 CIV. 9893, 1998 WL 91089, 1998 U.S.Dist. LEXIS 2289 (S.D.N.Y. March 2, 1998) (remitting $150,000 punitive damages award against three individuals to $2,000 each, finding $50,000 award per person greatly exceeded the amount necessary to deter defendants); *Iannone v. Harris, Inc.,* 941 F.Supp. 403, 413–15 (S.D.N.Y. 1996) (remitting $250,000 punitive damages award to $50,000 where no finding of discrimination but only retaliation which included retaliatory discharge); *Kim v. Dial Serv. Int'l, Inc.,* No. 96 CIV. 3327, 1997 WL 458783 (S.D.N.Y. Aug. 11, 1997) (finding $725,000 punitive damages award excessive and remitting to $25,000; finding degree of reprehensibility for discrimination based on race low and determining award of front and back pay punitive in nature).

██ After having considered the three *Gore* factors, the Court concludes the maximum award of punitive damages that would not be excessive is $50,000. Normally, where a damage award is found to be excessive, the court may order a new trial on all issues or on damages alone or may grant remittitur. *See Tingley Sys., Inc. v. Norse Sys., Inc.,* 49 F.3d 93, 96 (2d Cir.1995). Here, however, the statutory cap of $50,000 is equal to the punitive damages the Court finds to be reasonable.[16] Such a finding obviates the need for remittitur.

### CONCLUSION

After full consideration of the parties' papers and for the reasons set forth above,

---

instances of misconduct with respect to employees not at issue in the litigation to determine whether defendant's activity was an "aggravating factor" under the *Gore* analysis); *see also Ortiz–Del Valle v. National Basketball Ass'n,* 42 F.Supp.2d 334, 345 (S.D.N.Y.1999) (considering a finding of a continuing violation of misconduct, defined as proof of ongoing discriminatory policies or practices towards persons other than the plaintiff, to determine whether defendant's activity was an "aggravating factor" under the *Gore* analysis).

Even if "repeated instances of misconduct" were to refer to repeated instances against the plaintiff, however, the Court finds no such repetitions occurred in the case at bar. While there were repeated instances of collecting negative comments about the plaintiff and placing these materials in a separate file, this Court finds these activities constitute one continuous activity rather than separate instances of repeated conduct. Thus, under either reading of the *Gore* standard, this Court finds there were no aggravating factors evident in this case sufficient to warrant a finding of a high degree of reprehensibility under the *Gore* analysis.

**16.** The statutory cap for punitive and compensatory damages in this case is $50,000. *See* 42 U.S.C. § 1981a(b)(3)(A).

North Shore's Rule 50 motion for judgment as a matter of law dismissing the two causes of action sounding in retaliation or for damages and North Shore's Rule 59 motion for a new trial of the said causes of action sounding in retaliation or for damages are denied. The jury award of $100,000 for back pay is affirmed. The jury award of $160,000 for front pay is vacated, and the Court awards Fernandez $50,000 for front pay. The jury award of $100,000 in punitive damages is reduced to $50,000. The Court directs the clerk's office to enter judgment in accordance with this memorandum and order.

SO ORDERED.