Marinell **RICHARDSON**, Plaintiff,

v.

**TRICOM PICTURES & PRODUCTIONS, INC., a Florida corporation,** Defendant.

No. 02–60117–CV.

United States District Court,
S.D. Florida.
Miami Division.

Aug. 24, 2004.

Stuart A. Rosenfeldt, Michael Anthony Pancier, Shawn Logan Birken, Rothstein Rosenfeldt Dolin & Pancier, Fort Lauderdale, FL, for Marinell Richardson, plaintiff.

Clark Jones Cochran, Jr., Billing Cochran Heath Lyles & Mauro, Fort Lauderdale, FL, Gerard Joseph Curley, Jr., Gunster Yoakley & Stewart, Miami, FL, Gerard Joseph Curley, Jr., Rebecca Couts

Cavendish, Gunster Yoakley & Stewart, West Palm Beach, FL, Patrica Klein, Pompano Beach, FL, Romin N. Currier, West Palm Beach, FL, for James Trainer, Tricom Pictures and Productions, Inc., a Florida corporation, defendants.

## ORDER ON PENDING MOTIONS

ALTONAGA, District Judge.

THIS CAUSE came before the Court upon Plaintiff, Marinell Richardson's Motion for Award of Equitable Remedies Pursuant to 42 U.S.C. § 2000e–5(g) and Motion for Entry of Final Judgment Against Defendant (D.E. 276–1 & 276–2); and Defendant, Tricom Pictures & Productions, Inc.'s Cross–Motion to Reduce the Jury's Advisory Verdict and for Remittitur (D.E.278). The Court has carefully considered the Motions, the response and reply memoranda, the argument of counsel, and applicable law.

## I. BACKGROUND

Plaintiff, Marinell Richardson ("Richardson"), alleged in her Second Amended Complaint that she was employed as a sales representative by Defendant, Tricom Pictures & Productions, Inc. ("Tricom"), between November of 2000 and June 29, 2001. She identified Defendant, James Trainer ("Trainer"), as her immediate supervisor. The Second Amended Complaint alleged various acts of physical and verbal sexual harassment of Richardson by Trainer during the course of Richardson's employment. Richardson also alleged that she was retaliated against by Tricom after she complained about Trainer's conduct, and that Tricom failed to pay her at the time-and-a-half overtime rate for hours she worked in excess of forty per week. These acts, it was alleged, violated 42 U.S.C. § 2000e, et seq. ("Title VII"), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, the Florida Civil Rights Act ("FCRA"), and Fla. Stat. § 760.10. Richardson further alleged state law tort claims against Tricom for negligent hiring, negligent training and supervision, negligent retention, and state law tort claims for battery and assault against Trainer. The various state law claims were dismissed prior to trial pursuant to 28 U.S.C. § 1367(c), which permits courts to decline to exercise supplemental jurisdiction over nonfederal claims under certain conditions.

This matter was tried before a jury that rendered a verdict in favor of Tricom on Richardson's FLSA overtime claim (Count VII) and Title VII sexual harassment claim (Count I), and in favor of Richardson on her Title VII retaliation claim (Count I). As to the overtime claim, the jury found that Richardson did not prove by a preponderance of the evidence that she worked in excess of forty hours during any given workweek. As to the sexual harassment claim, the jury found that Richardson did not prove by a preponderance of the evidence that she was subjected to harassment of a sexual nature that was so severe or pervasive that it altered the terms and conditions of her employment and created an intimidating, hostile and abusive working environment.

As to the retaliation claim, the jury found that Richardson proved by a preponderance of the evidence that she was terminated because of her complaints about sexual harassment. The jury also found that Richardson proved by a preponderance of the evidence that she should be awarded damages to compensate her for a net loss of wages and benefits to the date of trial as a result of the retaliation. In an advisory verdict, the jury decided that the total amount of lost wages and benefits, i.e., back pay, that Richardson should receive is $20,000.00. However, the jury found that Richardson should not be awarded damages to compensate her for

emotional pain and mental anguish, as she had failed to prove she suffered such damages by a preponderance of the evidence. Finally, in considering punitive damages, once again on an advisory basis, the jury recommended the assessment of punitive damages in the amount of $50,000.00, finding that Richardson proved by a preponderance of the evidence that (1) a higher management official of Tricom acted with malice or reckless indifference to Richardson's federally protected rights, and (2) Tricom did not attempt in good faith to comply with the law by adopting policies and procedures designed to prohibit discrimination in the workplace.

Richardson has now moved for the entry of an order awarding her equitable remedies and for entry of Final Judgment. Richardson seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Tricom has violated her civil rights and the anti-retaliation provisions of Title VII, as set forth in 42 U.S.C. § 2000e–3(a). Richardson also seeks monetary relief, under 42 U.S.C. § 2000e–5(g), in the form of back pay (net of all interim earnings) in the amount of $59,208.00, or alternatively, if the Court determines that Tricom did present sufficient evidence that Richardson did not adequately mitigate her damages, $20,000.00 as awarded by the jury; prejudgment interest on back pay at the rate of 5.70%, in the amount of $3,374.86; one year of front pay in lieu of reinstatement in the amount of $30,000.00; punitive damages in the amount of $50,000.00 as awarded by the jury; and postjudgment interest in accordance with 28 U.S.C. § 1961(a). Richardson further requests that the Court enter an order entitling her to attorney's fees and costs pursuant to 42 U.S.C. § 2000e–5(k), the amounts of which may be determined by separate motion filed after the entry of judgment.

Tricom has moved to reduce the jury's advisory verdict and for remittitur. Tricom contends that Richardson's requests for declaratory relief, an increase of the back pay award to $59,208.00, and front pay of $30,000.00, should be denied, and the jury's back pay and punitive damages awards should be reduced.

Tricom has presented the following arguments, most of which the Court finds compelling: Richardson is not entitled to a declaratory judgment because a plaintiff cannot maintain an action for declaratory or injunctive relief unless she can demonstrate a good chance of being injured by the defendant in the future, which Richardson has not shown; the jury's advisory verdict of $20,000.00 in back pay should be reduced to $10,961.48 because it appears that the former did not take into account, or did not fully take into account, Richardson's failure to mitigate her damages; even if back pay is awarded, an additional award of prejudgment interest would not be equitable; Richardson is not entitled to front pay based on the same failure to mitigate damages, failure to present evidence that she is entitled to front pay, and failure to provide the necessary information to calculate an award of front pay; and the court should reduce the jury's punitive damages award, also to $10,961.48, because the award violates due process and because the evidence does not support the amount of the verdict.

## II. *LEGAL DISCUSSION*

### A. *Back Pay*

Title 42, United States Code, Section 2000e–5(g)(1) states:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employ-

ment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement of hiring of employee, with or without back pay (payable by the employer ... responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

Back pay, and interest on back pay, are not "compensatory damages," and therefore are excluded from an award of compensatory damages for a Title VII violation. 42 U.S.C. § 1981a(b)(2). "[A]n award of back pay is intended to make the claimant whole, not to confer a windfall." *E.E.O.C. v. Joe's Stone Crab, Inc.,* 15 F.Supp.2d 1364, 1378 (S.D.Fla.1998). Towards this end, Title VII specifically provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g)(1); *Joe's Stone Crab,* 15 F.Supp.2d at 1378. Therefore, "in calculating a back pay award, the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings." *Joe's Stone Crab,* 15 F.Supp.2d at 1378.

■ While a successful Title VII claimant, such as Richardson, is generally entitled to an award of back pay, the claimant must make a reasonable and good-faith effort to mitigate her damages. *Id.* (citing *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1527(11th Cir.1991)); *Giles v. General Elec. Co.,* 245 F.3d 474, 492 (5th Cir.2001) ("Because it is an equitable remedy, back pay is subject to a duty to mitigate damages.") (citation omitted); *Szedlock v. Tenet,* 139 F.Supp.2d 725, 733–34 (E.D.Va.2001) ("While a Title VII plaintiff is generally entitled to back pay 'as a matter of course,' the right of a plaintiff to claim back pay is limited by claimant's

statutory duty to mitigate the employee's damages."). "[A] claimant must mitigate her damages by seeking employment 'substantially equivalent' to the position she was denied." *Joe's Stone Crab,* 15 F.Supp.2d at 1378 (citing *Weaver,* 922 F.2d at 1527). It is the employer's burden to prove its mitigation defense to a Title VII back pay award. *Id.* (citing *Smith v. Great Am. Restaurants, Inc.,* 969 F.2d 430, 438 (7th Cir.1992)); *Carey v. Mt. Desert Island Hosp.,* 156 F.3d 31, 41 (1st Cir.1998).

■ " 'Substantially equivalent employment' is employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status to those available to employees holding the position from which the Title VII claimant has been discriminatorily terminated.' " *Joe's Stone Crab,* 15 F.Supp.2d at 1378 (citing *Weaver,* 922 F.2d at 1527). The employer must show that the claimant failed to exercise "reasonable diligence to locate other suitable employment and [or] maintain a suitable job once it is located." *Baker v. John Morrell & Co.,* 263 F.Supp.2d 1161, 1179 (N.D.Iowa 2003); *see also Excel Corp. v. Bosley,* 165 F.3d 635 (8th Cir.1999).

■ "If an employee suffers a '[willful] loss of earnings, however, the employer's backpay liability is tolled." *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160 (6th Cir.1996) (citing *N.L.R.B. v. Ryder Sys., Inc.,* 983 F.2d 705, 712 (6th Cir. 1993)). The Sixth Circuit in *Thurman* discussed the *Ryder* case and cited another Fourth Circuit decision as follows:

In *Ryder,* an employer claimed backpay should be tolled because the plaintiffs were fired for insubordination and therefore suffered a [willful] loss of earnings. The court held, "[A] discharge from interim employment will toll backpay liability only if the employ-

ee's misconduct was 'gross' or 'egregious.'" *Id.* at 713. Similarly, an employee's discharge for cause due to his [willful] violation of company rules will toll backpay. *Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269 (4th Cir.1985). 90 F.3d at 1169. The court then distinguished the facts in *Ryder* and *Brady* from the facts before it explaining that, although the plaintiff in *Thurman* was fired for cause from his subsequent employer, the discharge was based on a vehicle *accident,* and there was no evidence that the plaintiff acted intentionally. The court therefore did not toll back pay based on the defendant's failure to establish that plaintiff "acted [willfully] or committed a gross or egregious wrong." *Id.* Thus, *Thurman* stands for the proposition that a plaintiff who is involuntarily terminated from substantially equivalent employment is not entitled to a back pay award if the behavior that caused the termination was intentional.

The *Brady* decision addressed the effect that a discharge for misconduct from interim employment should have on a back pay award in this way:

> [W]e are of the opinion the Title VII claimant must also use reasonable diligence to maintain any suitable employment which is secured. To permit otherwise would force the Title VII defendant to pay for the misconduct of a claimant in subsequent employment. We do not think that such a result is properly related to the make whole objective of back pay.
>
> In determining what reasonable diligence requires, it seems clear that it should not permit all on the job behavior except [willful] or wanton conduct. The standard of reasonable diligence is more discerning. It requires instead that in maintaining subsequent employment, a Title VII claimant act reasonably and responsibly in accordance with employer rules. As noted earlier, the duty of a Title VII plaintiff to mitigate damages includes the obligation to accept a "job substantially equivalent to the one he was denied." *Ford Motor Co. v. EEOC,* 458 U.S. [219]at 232, 102 S.Ct. [3057]at 3066[, 73 L.Ed.2d 721 (1982)]; *see Edwards v. School Bd. of City of Norton, Va.,* 658 F.2d [951]at 956[ (4th Cir. 1981)]. Such a duty of necessity includes the obligation to make reasonable and good faith efforts to maintain that job once accepted. When either of these obligations are not met, a claimant should be said to have voluntarily removed himself from the job market or the work place and forfeited his right to back pay. *See Ford Motor Co. v. EEOC,* 458 U.S. at 232, 102 S.Ct. at 3066.

\* \* \* \* \* \*

We are thus of opinion that the rationale which supports the tolling of the back pay period following a voluntary quit should also apply to those terminations which result from a violation of an employer's rules. It would be incongruous to hold that while Title VII claimants cannot voluntarily terminate suitable, interim employment without suffering a back pay reduction, they may choose without penalty to risk the loss of similar employment by engaging in misconduct. To permit claimants the freedom of substantially unrestrained conduct during interim employment unfettered by the loss of back pay, would serve only to punish the employer for the misconduct of the claimant, and be inconsistent with the requirement of exercising reasonable diligence.

753 F.2d at 1277, 1278–79.

In *Brady,* two of the plaintiffs were discharged from their subsequent employment for violating the stated rules of their respective employers and the discharges

were found to be justified. The court determined that violation of the employer's rules amounted to a lack of reasonable diligence in maintaining interim employment. *Id.* at 1279. Accordingly, the court held that these plaintiffs were entitled to back pay from the time of their wrongful discharge by the defendant until the day of their discharge by the subsequent employer, and the defendant would receive a credit for the wages the plaintiffs actually earned during this period. During the period of unemployment following the discharge from the subsequent employment, the plaintiffs were entitled to no back pay. The back pay period commenced to run again upon plaintiffs' reemployment, and for such reemployment period the defendant would receive a credit for the wages plaintiffs earned had they not been discharged for cause from the previous employer at the wage rate effective upon that discharge, or the wages they did earn, whichever was greater. *Id.* at 1280.

Other courts, relying on *Brady*, have reduced or offset back pay awards beyond the date of the aggrieved employee's involuntary termination from a new job. *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936–37 (5th Cir.1996) (vacating district court's back pay award to a plaintiff with respect to the period after his involuntary termination from a new job because of excessive absences, excessive use of the company phone for personal phone calls and for his conflicts with another staff member); *Johnson v. Spencer Press of Maine, Inc.*, 249 F.Supp.2d 5, 7 (D.Maine 2003) (in suit alleging unlawful retaliation in violation of the Americans with Disabilities Act, employee failed to exercise reasonable diligence in mitigating damages where he was fired from new job for violating company work rules by consuming food products on the job without paying for them, and employer was entitled to an ongoing offset against a back pay award under the ADA beyond the date of employee's dismissal from his new job). In all of these cases, the plaintiffs either presented no evidence disputing the reasons given for termination from substantially equivalent employment, or the evidence indisputably showed that the plaintiff was terminated for cause based on intentional conduct in violation of company rules.

Here, the jury heard evidence of Richardson's employment after she was terminated by Tricom. The Court now reviews this evidence in determining whether any adjustments to the jury's advisory back pay award of $20,000.00 are necessary to comport with the law on back pay awards.

Richardson was able to obtain a position as a pledge producer at WLRN, Inc. on November 13, 2001, and later a position at Barton G, both of which paid her a salary of $32,000.00 per year, $2,000.00 more a year than she earned at Tricom. She was terminated or forced to resign from WLRN and was then laid off from Barton G approximately three weeks before the trial. Tricom is not challenging the comparability of Richardson's two post-termination jobs to her Tricom job. Richardson testified at trial that she made reasonable efforts to obtain similar employment. Therefore, the court assumes, as Tricom has, that Richardson's subsequent positions with WLRN and Barton G were "substantially equivalent."

Richardson is seeking an award of back pay in the amount of $59,208.00. While employed at Tricom, during the relevant time period, Richardson earned an annual salary of $30,000.00. This breaks down to $2,500.00 per month. Richardson was terminated from Tricom on June 29, 2001. Thus, 28 months lapsed from Richardson's termination up through the date of trial, which Richardson contends entitles her to a gross back pay award of $70,000.00 ($2,500.00 times 28 months), less applicable

interim earnings. According to Richardson, her interim earnings during this time period are $3,900.00 from WLRN and $6,892.00 from Barton G. Thus, Richardson seeks a net back pay award in the amount of $59.208.00 calculated as follows ($70.000.00–$10,792.00).

■ Tricom argues that the jury's advisory verdict of $20,000.00 must be reduced because it does not properly reflect Richardson's failure to mitigate her damages. The evidence showed Richardson's employment at WLRN was terminated after three months because of her inability to cooperate with peers; her lack of respect for peers, particularly part-time employees; her inappropriate behaviors in front of members of the general public who were volunteering, reflecting negatively on the name and reputation of WLRN and the non-profit Friends of WLRN; and her alienation of nearly the entire staff of WLRN, forcing her supervisor to act as an intermediary between Richardson and nearly every other staff member with whom she was required to interact, including four employees in the membership department, the Radio Station Manager, the Radio Program Director, and the weekday morning program host. Numerous complaints about Richardson's conduct were received by management from WLRN and Friends of WLRN staff members.

This information regarding Richardson's problems at WLRN was contained in a WLRN letter/memo of termination of Richardson, which was admitted as a business record during the trial, and the testimony of Karen Echols, a corporate representative of WLRN. Ms. Echols testified that WLRN's termination of Richardson was based on performance problems, mainly Richardson's inability to get along with WLRN staff and volunteers. Richardson confirmed, during her own testimony, the testimony of Ms. Echols that Richardson was involuntarily terminated from WLRN, or forced to resign. Richardson did not dispute that she had personal conflicts with other WLRN employees, and that this caused her termination. Thus, it is apparent that Richardson failed to mitigate her damages by acting in a manner that caused her involuntary termination. There was no evidence indicating that her behavior at WLRN resulted from emotional distress or psychological injuries that may be attributed to her termination from Tricom. Indeed, the jury found that Richardson should not be awarded damages to compensate her for emotional pain and mental anguish, presumably because they found she did not suffer such injuries.

Tricom requests that the court deny Richardson back pay for the period of time after her involuntary termination from WLRN. Thus, according to Tricom's calculations, Richardson is entitled to back pay from her last day of employment at Tricom, June 29, 2001, up to her first day of employment at WLRN, November 13, 2001, a period of 19 weeks. Tricom agrees that Richardson's back pay should be calculated at $2,500.00 per month, which breaks down to $576.92 per week ($30,000.00 divided by 52 weeks). Tricom proposes that Richardson is entitled to $10,961.48 (19 weeks times $576.92). However, if the Court were to allow back pay extending beyond Richardson's employment at WLRN, Tricom asserts that the amount earned by Richardson at WLRN was $8,000.00 ($615.38 per week times 13 weeks), and not the $3,900.00 stated in Richardson's Motion. Tricom argues that the evidence shows that Richardson worked for WLRN for 13 weeks, at $615.38 per week ($32,000.00 per year divided by 52 weeks), resulting in earnings of $8,000.00. Tricom requests that this amount, in addition to Richardson's earnings at Barton G, should be deducted from any back pay award extending beyond her employment at WLRN.

The $59,208.00 number suggested by Richardson and the $10,961.48 urged by Tricom were presented to the jury. The jury decided to award $20,000.00 to compensate Richardson for her net loss of wages and benefits to the date of trial, *i.e.*, back pay. Richardson acknowledges that the jury's award supports the reasonable interpretation that the jury may have believed that Richardson did not fully mitigate her damages, but this would simply be an interpretation of the jury's verdict, not an express jury finding. *See Reiner v. Family Ford, Inc.*, 146 F.Supp.2d 1279, 1286–87 (M.D.Fla.2001) (noting that while the jury was instructed on the duty to mitigate, it did not receive a specific interrogatory on that issue; rather, like Richardson's jury, the jury was simply asked whether it found from a preponderance of the evidence that plaintiff should be awarded damages to compensate for a net loss of wages and benefits up to the date of trial). Richardson argues that Tricom did not submit any evidence that she failed to mitigate her damages regarding lost wages. Should the Court conclude that Tricom did prove that Richardson did not fully mitigate her earnings, however, Richardson requests that the Court award a back pay award commensurate with the jury award.

Richardson challenges the testimony from the WLRN representative as not reliable because Ms. Echols was not there when Richardson worked at WLRN and she basically testified from a memo in Richardson's personnel file as to events leading to Richardson's termination from WLRN. Contrary to Richardson's assertions, a review of the testimony indicates that Ms. Echols spoke based on personal knowledge of the circumstances surrounding Richardson's termination from WLRN

and read from the WLRN termination letter/memo that was admitted under the business record exception to the hearsay rule. Moreover, as previously mentioned, Richardson herself admitted that she had difficulties getting along with others at WLRN, including one of her supervisors, and that resulted in her termination. She also admitted that she was given the choice of either resigning or being fired, and that she elected to be terminated so that she could receive unemployment benefits. Thus, WLRN's reasons for termination are unrebutted and the involuntary termination was justified on this record.

Based on the foregoing, Tricom has made a showing that Richardson did not exercise reasonable diligence in mitigating her damages by maintaining substantially equivalent employment at WLRN. Even if she was not in direct violation of company rules at WLRN, she was terminated for cause based on repeated behavior that was not accidental, and was, according to the WLRN representative, egregious. However, Tricom did not offer evidence regarding the circumstances surrounding Richardson being laid off by Barton G. Applying *Brady*, the leading case on this issue, Richardson is entitled to back pay from the time of her termination from Tricom, June 29, 2001, until the date of her termination from WLRN. Richardson is then entitled to back pay for the period when she was employed by Barton G and thereafter until trial,[1] since Tricom has not shown that Richardson failed to mitigate her damages during this period. The only period for which Richardson is not entitled to back pay is the period between her jobs at WLRN and Barton G. Tricom will receive credit for Richardson's actual earnings at WLRN and Barton G, which

---

1. In her Motion for equitable remedies, Richardson seeks back pay up through the date of trial, and not through the date of judgment.

paid her the same annual salary of $32,000.00.

Some of the dates relevant to the foregoing back pay calculation are stated in the parties' briefs and are reflected in the record, and some are not.[2] Accordingly, within *ten (10) days* from the date of this Order, the parties shall file a joint proposed back pay calculation, consistent with this Order, which shall include the precise date that Richardson was terminated from WLRN and the precise date that Richardson began her employment with Barton G, for inclusion in the final judgment. On any issues as to which the parties have a dispute, such as, for example, the amounts of Richardson's actual earnings at WLRN and Barton G, the parties shall reference and provide a photocopy of the pertinent portions of the trial transcript and/or the admitted trial exhibits on which they rely.

### B. *Prejudgment Interest on Back Pay Award*

■ In *Smith v. American Serv. Co. of Atlanta, Inc.,* 796 F.2d 1430, 1432–33 (11th Cir.1986), the Eleventh Circuit held that, in analyzing the issue of whether prejudgment interest on back pay awards should be awarded to prevailing Title VII claimants, the district court should look to the practice under the National Labor Relations Act ("NLRA") with respect to prejudgment interest on back pay awards. *See also Brown v. A.J. Gerrard Mfg. Co.,* 715 F.2d 1549 (11th Cir.1983) (en banc) (per curiam). In *E.E.O.C. v. Joe's Stone Crab,* 15 F.Supp.2d 1364, 1379 (S.D.Fla. 1998), the court elaborated on the issue of awarding prejudgment interest on back pay awards, stating:

> "Title VII authorizes prejudgment interest as part of the backpay remedy .... The backpay award authorized by [Title VII] is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination. Prejudgment interest, of course, is an element of complete compensation." *Loeffler v. Frank,* 486 U.S. 549, 558–59, 108 S.Ct. 1965, 1970–71, 100 L.Ed.2d 549 (1988) (internal quotation marks and citations omitted) (internal quotation marks and citations omitted); *see also EEOC v. Guardian Pools, Inc.,* 828 F.2d 1507 (11th Cir.1987); *Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931 (1st Cir. 1995). *An award of prejudgment interest adjusts the back pay award for inflation and reflects the present day value of income that should have been paid to the claimant in the past.* To determine the appropriate interest rate, courts have traditionally turned to [the] National Labor Relations Act (NLRA) for guidance. *See, e.g., Brown v. A.J. Gerrard Mfg. Co.,* 715 F.2d 1549 (11th Cir.1983) (en banc) (per curiam). Under the NLRA there has been a consistent practice of awarding prejudgment interest on back pay awards. Furthermore, in 1977, the National Labor Relations Board adopted the Internal Revenue Service's (IRS) prime rates and rejected the traditional flat six percent interest rate. The Eleventh Circuit has held that the IRS prime rates are to be used to calculate the amount of prejudgment interest on back pay awards in Title VII cases. *See Guardian Pools, Inc.,* 828 F.2d at 1512. Accordingly, in the exercise of its discretion, the court concludes that each of the claimants is entitled to prejudgment interest on their back pay award ....

(emphasis added). *See also U.S. v. City of Warren, Mich.,* 138 F.3d 1083, 1096 (6th Cir.1998) (purpose of awarding prejudgment interest under Title VII is to compensate victims both for time value of lost money as well as for effects of inflation);

---

**2.** The trial exhibits are now exclusively in the possession of the parties.

*Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1170 (6th Cir.1996) (award of prejudgment interest is element of complete compensation in Title VII back pay award; prejudgment interest helps to make victims of discrimination whole and compensates them for true cost of money damages they incurred); *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 145 (2d Cir.1993) (Title VII authorizes district court to grant prejudgment interest on back pay award; its purpose is to prevent employer from attempting to enjoy interest-free loan for as long as it can delay paying out back wages); *Robinson v. Instructional Sys., Inc.,* 80 F.Supp.2d 203, 207 (S.D.N.Y.2000) (employee was entitled to prejudgment interest on back pay award in Title VII retaliation action against employer; interest would help ensure that employee was made whole, that employer would not profit from any delay in paying wages, and that remedial purposes of Title VII would be served); *Price v. Interstate Warehousing, Inc.,* 49 F.Supp.2d 1081, 1082 (N.D.Ill.1999) (prejudgment interest on back pay is awarded to compensate employee for the loss of use of money); *Davis v. Rutgers Casualty Ins. Co.,* 964 F.Supp. 560, 575 (D.N.J.1997) ("Prejudgment interest in a Title VII case is an equitable remedy meant to compensate for the plaintiff's loss of the value of money over time, and to avoid a windfall to defendant in paying past wages in current dollars while having enjoyed the use of the capital over the years."); *Ford v. Rigidply Rafters, Inc.,* 984 F.Supp. 386, 391 (D.Md. 1997) ("An award of [prejudgment] interest [on back pay] ensures that inflation does not consume the value of a back pay award, and ensures that a discriminating employer does not reap an unfair benefit from 'the inherent delays of litigation'") (citation omitted); *Iannone v. Frederic R. Harris, Inc.,* 941 F.Supp. 403, 413 (S.D.N.Y.1996) (prejudgment interest on back pay award is element of complete compensation for Title VII plaintiff; "it is generally an abuse of discretion not to award interest, since that would reward the employer who has violated Title VII by effectively providing it with an interest-free loan"); *Ward v. Tipton County Sheriff Dep't,* 937 F.Supp. 791, 800 (S.D.Ind. 1996) (without prejudgment interest, plaintiff is not fully compensated for both loss of income and loss of the use of that income because prejudgment interest is element of complete compensation and normal incident of relief under Title VII).

 Although the decision to award prejudgment interest on back pay is discretionary, *Gloria v. Valley Grain Products, Inc.,* 72 F.3d 497, 500 (5th Cir.1996), there is a presumption that the court should award prejudgment interest on an award of back pay to a successful Title VII plaintiff. *See Drews v. Social Dev. Com'n,* 95 F.Supp.2d 985, 991 (E.D.Wis.1998); *Robinson v. Southeastern Pa. Transp. Auth.,* 1993 WL 126449, *2 (E.D.Pa.1993). "This presumption is only overcome in cases 'where the award would result in 'unusual inequities.''" *Robinson,* 1993 WL 126449 at *2 (quoting *Green v. USX Corp.,* 843 F.2d 1511, 1530 (3d Cir.1988) (citations omitted)). However, there is no "per se rule that requires prejudgment interest to be included in the [back pay] award." *Hadley v. VAM P T S,* 44 F.3d 372, 376 (5th Cir.1995); *see Gloria v. Valley Grain Products, Inc.,* 72 F.3d 497, 500 (5th Cir.1996) ("A general rule that prejudgment interest on every backpay award must be granted would obliterate the discretion of the district court. We are unable to simply ignore the recognized discretion of the district court in this area."). Prejudgment interest, if awarded, generally should be computed from the date of the adverse employment action, *see, e.g., Thomas v. Texas Dep't of Criminal Justice,* 297 F.3d 361, 372 (5th Cir.2002), up to the date the final judgment is entered.

*See, e.g., Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 757 (7th Cir.2002).[3]

 A Title VII plaintiff's failure to mitigate damages, alone, is insufficient to overcome the presumption in favor of a prejudgment interest award, *Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 869 (3d Cir.1995), although courts do take this into consideration. *See Hutchison v. Amateur Elec. Supply, Inc.,* 42 F.3d 1037, 1047 (7th Cir.1994) (prejudgment interest is element of complete compensation and normal incident of relief under Title VII; therefore, uncertainty introduced by jury's finding of partial failure of Title VII plaintiff to mitigate her damages did not suffice to defeat presumption in favor of prejudgment interest given that, without it, compensation of plaintiff was incomplete and defendant had incentive to delay); *Luciano v. Olsten Corp.,* 912 F.Supp. 663, 676 (E.D.N.Y.1996) (prejudgment interest on back pay and expenses would be awarded to employee in Title VII action; compensating employee for value of money she lost over time due to employer's discriminatory acts would serve Title VII's remedial purpose; denying prejudgment interest because facts of case justified punitive damage award would bring about illogical result because "punitive damages serve the entirely different purpose of deterrence and punishment," while "[p]rejudgment interest provides the plaintiff with what she would have earned on the money that the jury found was wrongfully withheld by the defendants," and awarding interest would not overcompensate employee); *Felts v. Radio Distributing Co., Inc.,* 637 F.Supp. 234, 238 (N.D.Ind.1985) (Title VII plaintiff was not entitled to prejudgment interest where she failed to reasonably mitigate her damages and introduced no evidence of willfulness; deciding whether to award

prejudgment interest in employment discrimination action, federal courts properly consider the weight of evidence based on which plaintiff prevailed on liability issue, whether defendant's employment discrimination was willful, whether the plaintiff reasonably attempted to mitigate her damages, and whether the amount of plaintiff's damage award was determinable before final judgment).

 Tricom cited two cases where courts exercised discretion and denied prejudgment interest. At oral argument, Tricom's counsel articulated the reasons Richardson should not receive prejudgment interest, *i.e.,* her ability to obtain two higher-paying jobs and her own failure to keep these other jobs. There is scant information in the record regarding Richardson's employment with Barton G, and this ambiguity, along with all other ambiguities, are resolved in Richardson's favor. The Court has found that Richardson only partially failed to mitigate her damages, and although Tricom's conduct falls short of being egregious or outrageous, the jury reasonably concluded based on the evidence that Tricom acted with malice or reckless indifference to Richardson's federally protected rights, and that Tricom did not act in good faith in enacting policies and procedures to prohibit discrimination. *See infra.* After balancing the equities, the undersigned will exercise her discretion and award prejudgment interest on Richardson's back pay award as fair and necessary to make Richardson whole, in accordance with the remedial purposes of Title VII, and because Richardson's back pay is easily ascertainable. *See, e.g., Daniels v. Pipefitters' Ass'n Local Union No. 597,* 945 F.2d 906 (7th Cir.1991) (prejudgment interest is

---

**3.** It appears that Richardson seeks prejudgment interest from the date of termination to the date of trial, rather than up to the date of the final judgment, since that is the period she uses in her back pay calculations.

available so long as amount is readily ascertainable); *E.E.O.C. v. Accurate Mechanical Contractors, Inc.*, 863 F.Supp. 828 (E.D.Wis.1994) (decision whether to grant or deny prejudgment interest in Title VII action is dependent on whether the amount of damages is easily ascertainable).

■ Having decided to award prejudgment interest on Richardson's back pay award, the remaining question is the applicable rate. The NLRA method is to use the adjusted federal rate established by the IRS in accordance with 26 U.S.C. § 6621. *See, e.g., E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987). An award of interest should therefore be calculated based on the IRS prime rates that prevailed during the relevant period.

Tricom has specifically stated that it does not object to Richardson's use of 5.70% as the adjusted IRS prime rate to be applied to a back pay award, which is the average of all of the IRS adjusted prime rates in effect from June 29, 2001 through the date of Richardson's Motion. *See Armstrong v. Charlotte County Bd. of County Com'rs*, 273 F.Supp.2d 1312, 1321 (M.D.Fla.2003) (calculating prejudgment interest based upon the average IRS prime rate, pursuant to 26 U.S.C. § 6621 of the Internal Revenue Code, over the relevant period). Tricom does not dispute Richardson's method for calculating the applicable rate. In addition to filing joint proposed back pay calculations, the parties shall file a joint proposed calculation of prejudgment interest on the back pay award in accordance with this Order, and within *ten (10) days*.

## C. *Front Pay*

■ Initially, the court finds that reinstatement of Richardson at Tricom is not a viable option. *See Reiner v. Family Ford, Inc.*, 146 F.Supp.2d 1279, 1285 (M.D.Fla. 2001) ("[A]lthough plaintiff Reiner is not seeking reinstatement, the fact that she is seeking front pay requires the court to decide in the first instance whether reinstatement is an option here."). "In deciding whether to award front pay, rather than reinstatement, courts look to whether discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy, ... the defendant's management [had] intimidated or threatened the plaintiff, ... or the termination had harmed the plaintiff's emotional well-being[.]" *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 619 (11th Cir.2000) (internal quotation marks and citations omitted). In this case, there is a "high degree of animosity" between Richardson and certain individuals who remain employed at Tricom, and in particular, between Richardson and James Trainer, the alleged harasser and now President and Chief Executive Officer of Tricom. *See Reiner*, 146 F.Supp.2d at 1285. Whatever discord existed before was exacerbated by the serious accusations that were made by both sides during the trial.

■ The same mitigation of damages analysis applies to back pay and front pay awards. *See, e.g., Armstrong v. Charlotte County Bd. of County Com'rs*, 2003 WL 21745230 (M.D.Fla.2003); *Reiner*, 146 F.Supp.2d at 1286–88. *See also Leidel v. Ameripride Serv., Inc.*, 2003 WL 21920914 (D.Kan.2003) (employee failed to mitigate front pay damages and therefore was not entitled to front pay award under Title VII where employee was able to find comparable employment on two occasions after his unlawful termination but chose to quit both jobs). In *Reiner*, the court held that the plaintiff failed to mitigate her damages, and was therefore not entitled to front pay, inasmuch as she voluntarily resigned from two subsequent jobs without compelling or justifying reasons, and was

forced to resign from a third based on absenteeism and substandard performance.

■ An award of front pay would not be appropriate, not only because of Richardson's failure to mitigate her damages, but also because Richardson failed to "produce 'competent evidence suggesting that [her] injuries have narrowed the range of economic opportunities available to [her]'" or that "'[her] injury has caused a diminution in [her] ability to earn a living.'" *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir.1992) (affirming denial of front pay *and reinstatement,* noting that the trial court denied front pay in part because the jobs held by plaintiff after his termination paid more, and stating that plaintiff "appears to be attempting to force [defendant] to insure his future employment success") (quoting *Gorniak v. National Railroad Passenger Corp.*, 889 F.2d 481 (3d Cir.1989)). The jury found that Richardson did not suffer emotional distress or mental anguish as a result of Tricom's actions, and after her termination from Tricom, she was able to obtain two comparable and higher-paying jobs at WLRN and Barton G. Because Richardson did not prove that her injuries precluded her from obtaining subsequent employment, she is not entitled to front pay. The back pay award will fully compensate Richardson for the harm caused by Tricom's conduct, which was not so egregious in comparison to other imaginable conduct. *See Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1529 (11th Cir.1991) ("Front pay ... is appropriate only when the other damages awarded will not fully compensate the plaintiff for his [or her] injury."); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F.Supp.2d 1364, 1380 (S.D.Fla.1998) ("Because a monetary award of front pay is calculated to end on the date that the discrimination victim attains the position she would have been in but for the discrimination, front pay is appropriate only

when the other damages awarded do not fully compensate the plaintiff.") (citing *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir.1991)); *see also Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277 (11th Cir.1992) ("'[b]ecause of the potential for windfall, [the] use [of front pay] must be tempered.... Front pay remains a special remedy, *warranted only by egregious circumstances.'*") (quoting *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir.1991)) (emphasis added).

### D. *Punitive Damages*

Tricom argues that the jury's verdict of $50,000.00 in punitive damages should be reduced, not that punitive damages should not be awarded at all, because the award violates due process and because the evidence does not support the amount of the verdict, *i.e.*, the punitive damages are excessive. It is undisputed that the $50,000.00 amount awarded by the jury in this case is the maximum statutory punitive damages amount that may be imposed on an employer of Tricom's size. *See* 42 U.S.C. § 1981a(b)(3)(A) (for defendants with more than 14 and fewer that 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, the maximum award of punitive damages under Title VII is $50,000.00).

■ Courts must consider whether the plaintiff proved that the defendant acted with the requisite state of mind to justify an award of punitive damages. To recover punitive damages under Title VII, a plaintiff must prove that defendant "'has engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *See, e.g., Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir.1999) (quoting 42 U.S.C. § 1981a(b)(1)). Malice or reckless indifference is shown when the employer know-

ingly violates federal law, *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) ("The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law. . . ."), which requires a showing of either an evil motive or intent to deprive a plaintiff of his or her federally protected rights or a conscious indifference to those rights. *Id.* at 536, 119 S.Ct. 2118. At a minimum, in order to be liable in punitive damages, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Id.* at 536, 119 S.Ct. 2118; *see Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1337 (11th Cir.2000).

 Although egregious or outrageous conduct may be indicative of an intent to violate federal law, such conduct is not necessary to show the requisite state of mind warranting punitive damages; all that is required is that an employee show that the employer discriminated in the face of perceived risk that its actions would violate federal law. *Kolstad,* 527 U.S. at 536–38, 119 S.Ct. 2118 ("[E]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.'"); *Alexander,* 207 F.3d at 1337. The Supreme Court explained that while "conduct committed with the specified mental state may be characterized as egregious," this "is not to say that employers must engage in conduct with some independent, 'egregious' quality before being subject to a punitive award." *Kolstad,* 527 U.S. at 538, 119 S.Ct. 2118. In other words, "section [1981a] does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind." *Id.* at 535, 119 S.Ct. 2118. In considering whether an employer acted with malice or reckless indifference, the district court must view the evidence in the light most favorable to the employee, *see, e.g., Baker v. John Morrell & Co.,* 266 F.Supp.2d 909, 950 (N.D.Iowa 2003), and

the defendant employer bears the burden of asserting and proving good faith compliance with Title VII as a means to avoid vicarious liability for punitive damages. *See, e.g., Reed v. Cracker Barrel Old Country Store,* 171 F.Supp.2d 741, 748 (M.D.Tenn.2001).

 Under the analytical framework used to determine whether a Title VII plaintiff is entitled to punitive damages, then, an employee may recover punitive damages under Title VII if the employee establishes three things: (1) that employer acted with knowledge that its actions may have violated federal law, or in the face of a perceived risk that its actions would violate federal law; (2) that liability may be imputed on the employer by showing that the employees involved in the unlawful action were acting within the scope of their employment; and (3) that the employer did not engage in good faith efforts to comply with Title VII. *See, e.g., Lampley v. Onyx Acceptance Corp.,* 340 F.3d 478, 482 (7th Cir.2003); *Knutson v. Ag Processing, Inc.,* 273 F.Supp.2d 961, 1001 (N.D.Iowa 2003).

 General knowledge of anti-discrimination law and policy is sufficient to ascribe awareness that particular discriminatory acts are prohibited by federal law, as required to support an award of punitive damages in a Title VII case. *Parrish v. Sollecito,* 280 F.Supp.2d 145, 152–53 (S.D.N.Y.2003) (citing cases). Although implementation of a written or formal anti-discrimination policy is relevant to evaluating an employer's good faith efforts to comply with Title VII, it is not sufficient in and of itself to insulate an employer from a punitive damages award. *Lampley v. Onyx Acceptance Corp.,* 340 F.3d 478, 482–83 (7th Cir.2003); *see Reed v. Cracker Barrel Old Country Store,* 171 F.Supp.2d 741, 749–50 (M.D.Tenn.2001) (evidence was sufficient to support jury's

finding that employer was not in good faith compliance with Title VII regarding retaliation, and thus employer was not entitled to remittitur of punitive damages on employee's retaliation claim; employer's sexual harassment policy contained no reference to retaliation for reporting or objecting to sexual harassment and manager training did not address retaliation). The employer must both have a policy and must use good faith efforts to enforce it. *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 385 (2d Cir.2001); *Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 568 (7th Cir.2001).

▬▬ When reviewing punitive damage awards for a *due process violation,* the Supreme Court has instructed courts to consider three factors: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The *Gore* decision is " 'instructive' to courts considering the amount of punitive damages awarded in employment discrimination cases." *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 614 (11th Cir.2000). In its subsequent decision in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418–429, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the Supreme Court applied and reiterated the importance of the three *Gore* factors. In applying the third *Gore* guidepost, courts should look to the amount of punitive damages authorized by other courts in similar cases, and the reasons the courts cited in justifying these awards. *See, e.g., Lafate v. Chase Manhattan Bank (USA)*, 123 F.Supp.2d 773, 790 (D.Del.2000). The Supreme Court and other federal courts have also elaborated on how courts should apply the first and second *Gore* guideposts.

In *Campbell,* the Supreme Court explained that the first *Gore* guidepost—the degree of reprehensibility of the defendant's conduct—is the " 'most important indicium of the reasonableness of a punitive damages award.' " *Campbell,* 538 U.S. at 419, 123 S.Ct. 1513 (quoting *Gore,* 517 U.S. at 575, 116 S.Ct. 1589). Reprehensibility is judged by considering whether:

> the harm caused was physical as opposed to economic; the tortious conduct evidenced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.

*Id.* at 1521 (quoting *Gore,* 517 U.S. at 576–77, 116 S.Ct. 1589).

The Supreme Court reversed the punitive damages award in *Campbell* "because the award was based, in part, on out-of-state conduct that was lawful where it occurred and conduct that bore no relation to the plaintiff's harm." *Bogle v. McClure,* 332 F.3d 1347, 1360 n. 11 (11th Cir.2003) (citing *Campbell,* 538 U.S. at 419–23, 123 S.Ct. 1513). The Supreme Court reasoned that:

> A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.

Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of reprehensibility analysis....

*Campbell,* 538 U.S. at 422–23, 123 S.Ct. 1513. The plaintiffs in Campbell "identified scant evidence of repeated misconduct of the sort that injured them;" therefore, the court held that the conduct that harmed them was the only conduct relevant to the reprehensibility analysis. *Id.* at 423–24, 123 S.Ct. 1513.

Applying the first reprehensibility guidepost, the Eleventh Circuit has found defendant's conduct to be sufficiently reprehensible where the defendant's wrongdoing "was more than mere accident," the defendant knew prior to engaging in the conduct that it was illegal, and yet it intentionally engaged in that conduct anyway. *Bogle,* 332 F.3d at 1361. The Eleventh Circuit has addressed *Gore's* second guidepost as follows:

> [T]he Supreme Court has been reluctant to "identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Campbell,* 123 S.Ct. at 1524. Although declining to impose a bright-line ratio which a punitive damages award cannot exceed, the Court has recognized that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* Citing a long history of providing sanctions of double, treble, or quadruple damages to deter and punish, the Court recently stated in *Campbell:*
>
> > While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios of 500 to 1 [as in *Gore* ], or in this case, of 145 to 1.
> >
> > Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages. The converse is also true, however. When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.
>
> In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered. *Id.* (quotation marks and citations omitted).

*Bogle,* 332 F.3d at 1361–62. In applying the second *Gore* guidepost in *Bogle,* the Eleventh Circuit determined that a ratio between punitive and compensatory damages of 4:1 was "both reasonable and proportionate to the amount of harm to the [plaintiffs] and to the general damages recovered." *Id.* at 1362. In *Campbell,* the Supreme Court stated that a *"punitive damages award at or near the amount of compensatory damages"* was justified, but remanded to the Utah Supreme Court for a determination of the proper calculation of the punitive damages. 538 U.S. at 411, 123 S.Ct. 1513.

■ Richardson offered some credible evidence to conclude that Tricom intentionally retaliated against Richardson for filing

a sexual harassment complaint against Trainer, knew this was a violation of Richardson's federal rights, and did it anyway. After considering all of the evidence and the jury's verdict, the undersigned concludes the evidence is sufficient to support the jury's findings on the retaliation claim, and to justify some award of punitive damages. There was enough evidence for the jury to conclude, as it did, that Tricom acted with malice or reckless indifference to Richardson's federally protected rights, in that it was at least aware of a risk that its retaliatory actions violated federal law. Based on the testimony of Tricom's management representatives, decisionmakers at the company knew that it was illegal to terminate an employee that complained about sexual harassment. This supports a conclusion that Tricom's conduct was "reprehensible" to some degree, involved retaliation and, at a minimum, constituted reckless disregard of Richardson's federally protected rights. *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 41–42 (1st Cir.2003) (when an employer retaliates against an employee because the employee engages in conduct that is protected by well-established federal civil rights statutes, a jury could, but need not, fairly infer that the employer harbored malice or reckless indifference towards those civil rights, warranting an award of punitive damages); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1066 (8th Cir.1997) (evidence that employer knew what constituted unlawful employment practices, systematically retaliated against employee for filing employment discrimination charge, and that retaliation was carried out by supervisors or management, was sufficient to support punitive damages under Title VII). The jury, by finding retaliatory discharge, necessarily found that Tricom's legitimate, non-discriminatory reasons for Richardson's termination were pretextual, and the Court does not find any reason to criticize or disturb that finding.

There was also sufficient evidence to support the jury's conclusion that Tricom did not act in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit sexual harassment and retaliation. Admittedly, Tricom had in place a sexual harassment policy, it promptly investigated Richardson's complaint, offered Richardson positions in other divisions, took remedial action that stopped the alleged harassment, and it instituted company-wide harassment training, as well as individual training for Trainer, after receiving Richardson's complaint. Tricom's efforts were not sufficient, however, to prevent the retaliation against Richardson, and this supports the jury's finding that Tricom did not act in good faith to comply with the law by enforcing its policies and procedures on sexual harassment and retaliation. *Parrish v. Sollecito*, 92 Fair Empl. Prac. Cas. 1021 (S.D.N.Y.2003) (evidence was sufficient to support award of punitive damages against employer in Title VII case; evidence demonstrated that employer knowingly violated federal law in retaliating against female employee who complained of sexual discrimination and that *employer's sexual harassment policy, if one existed, was not enforced in good faith*).

Nevertheless, a finding concerning Tricom's maliciousness or reckless indifference is a close call. The degree of reprehensibility is not great enough alone to support the amount of punitive damages recommended by the jury. Tricom's conduct, although reckless, does not rise to the level of malicious, egregious or outrageous conduct. There was no evidence that Tricom harbored an evil motive, engaged in trickery or deceit, or was responsible for a pattern or practice of discrimination or retaliation against employees.

· Consideration of *Gore's* first guidepost demonstrates that the punitive damages

award is unreasonable. The harm caused was not physical, and it was mostly economic, although "the harm included the violation of [Richardson's] civil rights." *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 614 (11th Cir.2000). The jury reasonably concluded that Richardson did not suffer any emotional pain or mental anguish as a result of Tricom's actions. Richardson was not only able to reenter the work force after her termination from Tricom, but she was able to obtain two comparable jobs that paid her a higher salary. Thus, Richardson's termination from Tricom did not have wide-ranging adverse personal impact and consequences. *See W & O, Inc.*, 213 F.3d at 615 (in comparing punitive and compensatory damages, courts should consider the harm likely to result from the defendant's conduct as well as the harm that actually has occurred) (citations omitted).

Moreover, there is no evidence that Tricom evinced a general indifference to the health and safety of others, nor that Richardson was financially vulnerable to a significant degree. Tricom's retaliatory conduct against Richardson was an isolated incident. Tricom's single incident of unlawfully terminating Richardson based on her filing of a sexual harassment complaint, while serious, was not repugnant, nor was it part of a discriminatory pattern. In this regard, the Court agrees with Tricom that, because Richardson has shown no retaliatory conduct by Tricom similar to that which harmed her, and because the jury properly found that Richardson did not show that she was subjected to sexual harassment that was so severe or pervasive that it altered her terms and conditions of employment or created a hostile or abusive working environment, the retaliation directed towards Richardson is the only conduct relevant to the reprehensibility analysis, and any reliance in this analysis on Trainer's prior bad act evidence, evidence that he was previously accused of

sexually harassing three other female employees, is improper. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–24, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

Although there is evidence from which the jury could find retaliation against Richardson, the degree of reprehensibility of Tricom's conduct is relatively low. Therefore, a reduction of the punitive damages recommended by the jury may be appropriate. *See, e.g., U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 615 (11th Cir.2000) ("[W]here a plaintiff suffers an adverse employment action that 'was not an isolated instance of discrimination by a single supervisor, but the predictable outcome of not-so-secret company practice,' such that the defendant 'maintained a policy of intentional disregard for the statutory rights of its female employees, we cannot say the maximum punitive damage award was inappropriate.'" (citing *Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 637–38 (7th Cir.1996) (amount of punitive damages to which a Title VII plaintiff is entitled is determined by degree of egregiousness of the underlying malice or reckless indifference))); *Vance v. Southern Bell Tel. and Tel. Co.*, 863 F.2d 1503 (11th Cir.1989) (award of $2.5 million in punitive damages in employment discrimination suit based on race was excessive; even if jury were properly able to conclude that employer acted with reckless or callous indifference in gross disregard of employee, award was high and shocking in view of totality of the evidence); *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C.*, 79 F.Supp.2d 197 (E.D.N.Y.2000) (punitive damages award of $100,000.00 in Title VII case was excessive, and would be reduced to $50,000.00, considering employer's low degree of reprehensibility; there was no evidence that employer engaged in repeated instances of misconduct with respect to other employ-

ees); *Rivera v. Baccarat, Inc.*, 10 F.Supp.2d 318 (S.D.N.Y.1998) (jury's award of $375,000.00 in punitive damages found excessive where there was no evidence that the employer engaged in a pattern of discrimination over time); *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403 (S.D.N.Y.1996) (in awarding punitive damages, repeated misconduct is more reprehensible than individual instance of malfeasance; thus, larger exemplary damage award may be imposed upon employer who has committed multiple violations of Title VII or whose actions are part of an overall pattern of discrimination).

The Second Circuit has addressed the effect of the statutory cap on the jury's and the judge's consideration of an award of punitive damages, as follows:

[Section] 1981a envisions that the level of punitive damages to be awarded will initially be set by the jury, and that the jury will make that determination without being influenced by the statutory caps. *See* 42 U.S.C. § 1981a. The jury is to be guided by the same principles that have traditionally guided such determinations: the amount necessary to punish the defendant for its conduct and to deter the defendant and other employers from engaging in such activity in the future. *See, e.g., Rowlett*, 832 F.2d at 204. Then, if the sum of the compensatory and punitive damages awarded by the jury exceeds the relevant cap, the district court reduces the award to ensure that it conforms with subsection (b)(3); that is, that it "[does] not exceed" the relevant cap for an employer of the defendant's size. *See, e.g., Hogan v. Bangor & Aroostook R.R. Co.*, 61 F.3d 1034, 1037 (1st Cir.1995). . Nothing in the language of the statute suggests that the cap on damages is intended to diminish the jury's role in assessing punitive damages or to alter the standard for judicial review of such awards. The legislative history of the provision confirms that it is not meant to exert upward or downward pressure on the size of jury awards. Rather, the purpose of the cap is to deter frivolous lawsuits and protect employers from financial ruin as a result of unusually large awards. The statutory limitation is not an endpoint of a scale according to which judges might recalibrate jury awards.

*Luciano v. Olsten Corp.*, 110 F.3d 210, 221 (2d Cir.1997) (internal citations omitted). In *Luciano*, the court affirmed the district court's reduction of the jury's punitive damages award of $5,000,002.00 in a Title VII employment discrimination case to the statutory cap sum of $300,000.00, notwithstanding the employer's contention that the court was required to reduce the jury's award of damages to an amount below the statutory cap for an employer that size because the cap amount should be reserved only for the most egregious cases of employment discrimination. The court found that in light of *substantial* evidence that the employer acted with malice or reckless indifference to plaintiff's rights, the award was not so excessive that it shocked judicial conscience and constituted a denial of justice. *Id.*

The Eleventh Circuit adopted the Second Circuit's analysis in *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 617 (11th Cir.2000) (also citing *Deters v. Equifax Credit Information Servs.*, 202 F.3d 1262, 1273 (10th Cir.2000)), holding that it is only appropriate for a judge to reduce a punitive damages award to below the maximum allowed under the statutory cap on Title VII damages if the award is unreasonable or otherwise shocks the judicial conscience and constitutes a denial of justice. In *W & O*, the Eleventh Circuit concluded that the punitive damages award was reasonable. Other courts have found an award of the statutory cap amount unreasonable and excessive, and

thus reduced the award, in cases where the degree of reprehensibility of the defendant's conduct was low. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1356 (7th Cir.1995) (statutory maximum punitive damage award of $100,000.00 could not be awarded in sex and pregnancy discrimination action, as facts were not sufficiently egregious to justify this award of 100% of the amount that can be legally awarded against an employer the defendant's size; jury denied pain and suffering, emotional distress, and other compensatory damages to employee); *David v. Caterpillar, Inc.*, 185 F.Supp.2d 918, 926–27 (C.D.Ill.2002) (employer's purposeful retaliation via non-promotion for employee's Title VII challenge to employer's alleged sexual discrimination warranted punitive damages award of $150,000.00; employer's conduct was more serious than pure discrimination claim but less reprehensible than quid pro quo sexual harassment case and thus called for award below statutory maximum of $250,000.00); *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403, 415–16 (S.D.N.Y.1996) (finding that maximum award of punitive damages that would not shock the conscience in retaliatory discharge case was $50,000.00; this amount, while less than the maximum statutory cap of $250,000.00, more properly reflected the severity of the case).

Here, the jury's award was based on evidence from which the jury could find Tricom's conduct reprehensible. Tricom had fair notice that it could be exposed to punitive damages through the Title VII punitive damages cap, and the jury reasonably concluded from the evidence that an award of punitive damages was necessary to punish Tricom and deter it from engaging in like conduct in the future. However, given the low level of reprehensibility of Tricom's conduct and the minimal actual harm to Richardson, the amount the jury arrived at may have been excessive and violated Tricom's due process rights. In accordance with the guidelines established by the Supreme Court, the Court finds that an award commensurate with Richardson's back pay award is the maximum amount that would not shock the judicial conscience or constitute a denial of justice.

Thus, for the reasons stated above, the Court is inclined to award punitive damages equal to the amount of the back pay award, which is the extent of Richardson's actual damages. Neither the jury nor this Court has awarded Richardson compensatory or nominal damages.[4] The Court will reserve a final determination on the amount of punitive damages until the back pay amount is fixed in accordance with this Order. However, upon consideration of the three *Gore* guideposts and the extensive caselaw cited above, the undersigned herein conveys her inclination to either reduce the $50,000.00 punitive damages award to match the back pay amount, or to award the $50,000.00 amount chosen by the jury,[5] whichever amount is lower. An award of $50,000.00 or less would be similar to awards authorized or imposed in similar retaliatory discharge cases, which is relevant to the third *Gore* guidepost. *See, e.g., Worth v. Tyer*, 276 F.3d 249, 269 (7th Cir.2001) (upholding punitive damages award of $25,000.00); *Rubinstein v. Administrators of Tulane*

---

4. An award of compensatory or nominal damages is not a prerequisite to an award of punitive damages in a Title VII action. *See U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 616 (11th Cir.2000); *E.E.O.C. v. W & O. Inc.*, 36 F.Supp.2d 1348, 1350 (S.D.Fla.1998).

5. Tricom has not argued that an award of $50,000 or lower would be disproportionate in comparison to the net worth of the company. *See U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d at 616–17 (11th Cir.2000).

*Educ. Fund,* 218 F.3d 392, 407 (5th Cir. 2000) (punitive damages reduced from $75,000.00 to $25,000.00, where jury awarded $2,500.00 in compensatory damages and nothing for emotional damage); *Van Horn v. Specialized Support Servs., Inc.,* 269 F.Supp.2d 1064, 1075 (S.D.Iowa 2003) (affirming award of $20,000.00 in punitive damages for retaliatory discharge); *Brissette v. Franklin County Sheriff's Office,* 235 F.Supp.2d 63, 94 (D.Mass.2003) (finding award of punitive damages in the amount of $20,000.00 appropriate); *Parrish v. Sollecito,* 280 F.Supp.2d 145, 162 (S.D.N.Y.2003) (punitive damages, which were reduced to $50,000.00 based on the mandatory cap, found to comport with due process); *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C.,* 79 F.Supp.2d 197, 208 (E.D.N.Y.2000) (punitive damages were reduced from $100,000.00 to $50,000.00 to account for the employer's low degree of reprehensibility); *Reeder–Baker v. Lincoln Nat'l Corp.,* 649 F.Supp. 647, 661–64 (N.D.Ind.1986) (awarding $25,000.00 in punitive damages, while awarding almost the same amount, $25,664.49, in back pay, plus other amounts for emotional distress and front pay).

### E. *Declaratory Relief*

■ Richardson argues that she is entitled to a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Tricom has violated Richardson's civil rights as set forth in 42 U.S.C. § 2000e–3(a). Tricom responds that Richardson is not entitled to declaratory judgment because a plaintiff cannot maintain a declaratory or injunctive action unless she can demonstrate a good chance of being injured by Tricom in the future, citing *Cox v. Phelps Dodge Corp.,* 43 F.3d 1345, 1348 (10th Cir.1994). According to Tricom, because Richardson is no longer employed by Tricom, and does not seek reinstatement, she cannot demonstrate a good chance of being injured by Tricom in the future, and thus is not entitled to declaratory relief.

■ Tricom's arguments have merit. "Neither declaratory nor injunctive relief is available to [Richardson] by reason of the fact that she is not seeking reinstatement and therefore lacks any present or future connection to [Tricom]." *Roberts v. United States Postmaster General,* 947 F.Supp. 282, 287 (E.D.Tex.1996) (involving sexual harassment and hostile working environment claims under Title VII). *See also Price v. Public Serv. Co. of Colorado,* 1 F.Supp.2d 1216, 1223 & n. 2 (D.Colo. 1998) ("[D]eclaratory relief is an anticipatory remedy and inapplicable as [Title VII plaintiff] is not alleging any future harm," nor could plaintiff claim future harm because she was no longer employed by the defendant employer). "[B]efore a declaratory judgment defining the rights and obligations of parties may issue, there must be some likelihood of the recurrence of the allegedly discriminatory policy," which usually occurs in situations where " 'in name or not, the suit is perforce a sort of class action for fellow employees similarly situated.' " *Williams v. General Foods Corp.,* 492 F.2d 399, 406 (7th Cir.1974) (citations omitted). Moreover, "[d]eclaratory and injunctive relief are inappropriate in a Title VII action where the evidence shows that defendant has abandoned previous employment practices, and indicates its intention to comply with all relevant Civil Rights Act requirements in the future." *Williams v. Yazoo Valley–Minter City Oil Mill, Inc.,* 469 F.Supp. 37, 52 (N.D.Miss.1978) (citations omitted).

Admittedly, the facts of *Cox v. Phelps,* 43 F.3d 1345 (10th Cir.1994), the case cited by Tricom, are different in that there, unlike here, the former employee was terminated for legitimate nondiscriminatory reasons, and this was one of the reasons

that her claim for declaratory relief pursuant to 28 U.S.C. § 2201 was rendered moot. However, the primary holding of the *Cox* case does apply, and it is that a Title VII plaintiff is not entitled to declaratory relief where the plaintiff lacks any present or probable future connection to the defendant employer. *Cox*, 43 F.3d at 1348. The Tenth Circuit stated that in order to justify declaratory relief, the " 'legal interest' [at issue] must be more than simply the satisfaction of a declaration that a person was wronged." *Id.* (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172–73, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977) (per curiam) (holding that a claim for declaratory relief is moot when no "present right" is involved and the primary interest is the emotional satisfaction from a favorable ruling)). The court further noted that this "basic principle of mootness" governs cases brought under the Declaratory Judgment Act as well as under Title VII. *Id.* (citations omitted). The court also explained that a " 'plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future." *Id.* (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991)).

■ Applying *Cox*, Richardson's request for declaratory relief is likewise moot because, although the jury found that she was terminated for unlawful reasons, she has no future connection to Tricom and therefore there is *no chance* that she will be injured by Tricom in the future. Based on the facts presented at trial and the foregoing principles of law, the Court declines to award declaratory relief to Richardson. There is no reason to believe that Tricom will engage in similar misconduct, certainly not with respect to Richardson, or with respect to anyone else in the future. There was no evidence presented indicating that Tricom has a policy, practice, custom or habit of retaliating against employees who file complaints about sexual harassment or discrimination in the workplace. Under the circumstances, declaratory relief is not justified.

### F. Post–Judgment Interest

Post-judgment interest will accrue on the Final Judgment pursuant to 28 U.S.C. § 1961(a).

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Award of Equitable Remedies Pursuant to 42 U.S.C. § 2000e–5(g) and Motion for Entry of Final Judgment Against Defendant (D.E. 276–1 & 276–2) is **GRANTED** in part; and Defendant's Cross–Motion to Reduce the Jury's Advisory Verdict and for Remittitur (D.E. 278) is **GRANTED** in part. A Final Judgment in conformity with this Order and the Jury's Verdict will be entered by separate order as required by Fed.R.Civ. P. 58 upon receipt of the parties' joint proposed back pay and prejudgment interest calculations. The parties may file, and the Court will consider, motions for attorney's fees and costs in accordance with S.D. Fla.L.R. 7.3, within ***thirty (30) days*** of entry of the Final Judgment.